No. 46,415

WILLIAM L. SHORT, *Appellant,* v. SUNFLOWER PLASTIC PIPE, INC., a corporation; KENNETH FREDERICK; ARDITH FREDERICK; J. D. FREDERICK; RUSSELL FREDERICK; WESLEY FREDERICK and LEONARD FREDERICK, *Appellees.*

(500 P. 2d 39)

Opinion filed July 19, 1972.

*Phillip Mellor,* of Holmes, Darrah and Mellor, of Wichita, argued the cause and was on the brief for the appellant.

*Jerry G. Elliott,* of Foulston, Siefkin, Powers and Eberhardt, of Wichita, argued the cause, and *Ray H. Tinder,* of Wichita, was with him on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action for breach of an alleged oral contract of employment and, alternatively, to recover the value of services performed on the theory of *quantum meruit.* The matter was tried to the court without a jury, and after making extensive findings and conclusions the court entered judgment for the defendants. Appeal has been duly perfected.

While the appellant asserts numerous points on appeal for reversal of the trial court's judgment, the issues presented indicate that primarily the court is confronted with a fact case on appellate review.

William L. Short (plaintiff-appellant) is a consulting engineer specializing in plastics. The individual defendants are six brothers and are the sole stockholders of F & W Wholesale Supply, Inc. (hereafter referred to as F & W). They are also the stockholders of Sunflower Plastic Pipe, Inc. (hereafter referred to as Sunflower). The officers and directors of both corporations are elected from among the stockholders and at least one stockholder holds an office in both corporations. Kenneth Frederick is president of F & W, and Ardith Frederick, who is also known as Melvin A. Frederick, is president of Sunflower.

It is the appellant's contention generally that he was retained because of his unique qualifications as an engineer skilled in the production of plastics; that he rendered services as an engineer to establish a plastic pipe extrusion plant owned by Sunflower Plastic Pipe, Inc. (defendant-appellee); that in addition to the engineering services for which he claims he was to receive his share of the profits, he was to do millwright work for which he was to receive and did receive an hourly rate of pay.

In the year 1967 the appellant and Kenneth Frederick became

acquainted as a result of purchases made by the appellant from F & W. Thereafter the appellant and Kenneth discussed the possibility of forming a partnership, but the idea was abandoned when they could not obtain any financial backing.

Later Kenneth learned of a plastic pipe company in Texas in financial trouble, whose equipment might be for sale. The appellant accompanied Kenneth on a trip to view the equipment.

Ardith Frederick also went on the trip for company and companionship because he was Kenneth's brother. The appellant had other business interests, and after the trip to Texas, he returned to his home and businesses in Independence, Missouri.

Shortly after April 18, 1968, the equipment was purchased and the appellant volunteered to bring the equipment from Texas to Wichita and *install* it for the appellees, the appellant agreeing to do such work for $12.50 per hour. The appellant stated, "I volunteered my services to help load the equipment in Texas, ship it to Wichita and install it. I rendered a bill for those services at $12.50 per hour and was paid." When the appellant agreed to install the equipment, there was no condition concerning a prolonged employment thereafter. Kenneth Frederick, with ratification of the other stockholders of Sunflower, which was in the process of being incorporated, hired the appellant for the purpose of installing the equipment. Kenneth Frederick located the building in Wichita to house the Sunflower plant and the appellant described it as ideal.

The appellant made numerous proposals to the appellees that he be hired on a long term basis as a consultant. Numerous meetings were had between the parties and lawyers seeking to reach that end. So far as the appellees were concerned one thing became clear. Any agreement between the appellees and the appellant would have to be in writing—no oral agreements would be acceptable. After a meeting on May 17, 1968, between some of the parties, the appellant caused a draft of a contract to be drawn by his attorneys, which, in the appellant's words, "I presented to defendant Kenneth *for him to present to his brothers for approval.* They did not sign it. Kenneth submitted a draft of his own back to me for my approval." (Emphasis added.)

Ward Lawrence, one of the appellant's attorneys, testified that after the meeting in his office on May 17, 1968, and after the draft had been prepared, the appellant told him that both he (appellant) and the appellees wanted changes made in the draft. The appellant

admitted the contractual arrangements "were to be reduced to writing." One of the terms in the *proposed* written agreement, drafted in the office of appellant's counsel, reads:

"The term of this agreement shall commence on the date this instrument is signed, and shall continue for a period of ten years unless terminated sooner as hereinafter provided. . . ."

The negotiations eventually broke down. The appellees rejected the appellant's proposals, and the appellant rejected the appellees' proposals. The appellees did not like the idea that the appellant could terminate the contractual relationship at will, but that the appellees were bound even after the appellant's death. They also were in disagreement as to the term of the contract, whether it should be for a term of five or ten years. The parties were in disagreement as to whether the appellant was to work a certain number of days per month or a number of days per year.

Sunflower was incorporated by charter on the 19th day of June, 1968, and the affidavit of paid-in capital was filed June 26, 1968. Substantial advancements were made by F & W on behalf of Sunflower pending its incorporation, and it is clear the proposed agreement of May 17, 1968, was designed to bind the appellant and Sunflower once it was executed.

Ardith Frederick testified that on or about the 12th day of July, 1968, he flagged down the appellant on a street in the city of Wichita and asked him about the proposals. He said, "He [appellant] told me his address and said if we wanted him to work for Sunflower, we should sign the contract and mail it to him and he would mail it back to us."

On the 19th day of July, 1968, Ardith Frederick on behalf of Sunflower sent a telegram to the appellant stating he should not return to Wichita as there was no contract. After the appellant received the telegram, he called Ardith Frederick and was told "we had no contract and that we never had a contract and he [Ardith] asked me [Short] to pick up my things and leave."

The appellant admitted at the trial he had no written contract with the appellees, but contended he had an enforceable oral contract with them.

The trial court found the parties intended not to be bound by any enforceable obligations until the contract was reduced to writing and executed. It ruled there was no enforceable contract between the appellant and the appellees. The trial court also found the

appellant had not proved entitlement to any remuneration on a *quantum meruit* theory.

The appellant in his first three points contends the trial court erred: ( *a* ) in concluding the contract was not effective until signed by the parties; ( *b* ) in finding that plaintiff's evidence failed to prove he had not been paid for his services; and ( *c* ) in finding plaintiff had not proved the value of his services.

The trial court found that on May 17, 1968, the appellant and Kenneth Frederick, acting for the group who later became the stockholders of Sunflower, orally agreed upon all the terms of an employment agreement between the appellant and Sunflower; that the terms and conditions of the oral agreement of employment of the appellant by Sunflower were reduced to writing by the appellant's attorney; and that one of the conditions and provisions of the oral agreement between the appellant and Sunflower for the appellant's employment, which agreement was reduced to writing, was that:

"The terms of this agreement shall commence on the date this instrument is signed, and shall continue for a period of ten years unless terminated sooner as hereinafter provided."

The trial court then found that no written agreement or contract was ever signed by the appellant and the appellees. In finding No. 7 it referred to *"The terms of the proposed employment agreement between"* the parties. (Emphasis added.) Later in the same finding the trial court referred to the "proposed employment agreement" as the "oral agreement," finding that "in addition to the compensation to be provided by the oral agreement, plaintiff was to receive $12.50 per hour for work in the installation of the machinery. All sums billed by plaintiff for the installation work has been paid and plaintiff asserts no claim for that amount in this litigation."

In addition, the trial court found:

"13. Plaintiff's evidence does not prove that plaintiff performed any work, labor or services for which he has not been paid in full by defendants.

"14. Plaintiff's evidence does not prove the value of the work and services claimed to have been performed by him and for which he seeks to be paid under the theory of quantum meruit."

The trial court concluded as follows:

"1. An oral agreement complete as to all its terms was entered into between plaintiff and Kenneth Frederick on May 17, 1968. In making such agreement, Kenneth Frederick was acting for the incorporators of Sunflower.

"2. An oral agreement complete as to all its terms is not an enforceable

agreement or contract until all the terms of the oral agreement are met and satisfied. An oral agreement, one of the terms and conditions of which is that the agreement shall commence on the date the written agreement is signed by the parties, does not commence and is not effective or enforceable until it is signed by the parties.

"3. Plaintiff is not entitled to performance of the oral agreement for the reason that a part of the oral agreement was that the oral agreement was to commence when reduced to writing *and signed by the parties*. The oral agreement was reduced to writing but never signed by either party.

"4. Defendant Sunflower, and all other defendants, filed only a general denial to plaintiff's claim. Having failed to raise the affirmative defenses enumerated in K. S. A. 60-208 (c) [statute of frauds], none of such defenses are available to them.

"5. The only issue raised by the answer and supported by evidence of the defendants with respect to plaintiff's first cause of action therefore, is, *whether an oral contract was made*. This issue is resolved in favor of the *defendants* and against the plaintiff.

"6. Plaintiff is denied recovery on his second claim for relief. Judgment is awarded defendants and against the plaintiff on plaintiff's claim on the theory of quantum meruit." (Emphasis added.)

K. S. A. 60-252 (*a*) provides that where trial is to the court, the trial judge shall find the controlling facts, and it further provides:

". . . *Findings of fact shall not be set aside unless clearly erroneous*, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. . . ." (Emphasis added.)

The appellant has the burden on appeal of showing that the findings made by the trial court are clearly erroneous. (*Mountain Iron & Supply Co. v. Jones*, 201 Kan. 401, 441 P. 2d 795; and *Aspelin v. Mounkes*, 206 Kan. 132, 135, 476 P. 2d 620.)

Decisions of our court after the adoption of the new code of civil procedure do not suggest that any change was made by 60-252 (*a*), *supra*, regarding a review of the evidence to sustain the findings of the trial court. (For federal decisions under Federal Rule No. 52 [*a*], providing that findings of fact made by the trial judge shall not be set aside unless clearly erroneous, see Gard, Kansas Code of Civil Procedure Annotated, § 60-252.) When findings of fact are attacked for insufficiency of evidence, or as being contrary to the evidence, the duty of this court extends only to a search of the record for the purpose of determining whether there is any competent substantial evidence to support the findings. This court will not weigh the evidence or pass upon the credibility of the witnesses. Under these circumstances this court must review the evidence in the light most favorable to the party prevailing below. (*Brohan v.*

*Nafziger,* 206 Kan. 58, 476 P. 2d 649; *Wiley v. Board of Education,* 205 Kan. 585, 470 P. 2d 792; and *Schnug v. Schnug,* 203 Kan. 380, 454 P. 2d 474.)

There was conflicting testimony in this case, and the facts have been reported most favorably to the prevailing parties in the court below. Implicit in the trial court's findings was a rejection of the theories asserted by the appellant. In effect, the trial court found the appellant failed to sustain his burden of establishing an enforceable contract, and failed to sustain his burden of establishing a right to *quantum meruit* damages. These are essentially negative findings.

A negative finding is descriptive of a trial court's failure to find the existence of a fact, or of a trial court's finding of the nonexistence of a fact or set of facts. In *American Housing & Investment Co. v. Stanley Furniture Co.,* 202 Kan. 344, 449 P. 2d 561, the plaintiff's theory was implicitly rejected by the trier of facts by a finding which this court characterized as a negative finding. The court said:

". . . *The effect of the [negative] finding is that such party did not sustain the requisite burden of proof.* Absent arbitrary and capricious disregard of undisputed evidence or some extrinsic consideration such as bias, passion or prejudice on the part of the jury, the finding cannot be disturbed. Appellate courts cannot nullify a jury's disbelief of evidence nor can they determine the persuasiveness of evidence which a jury may have believed (*Schroeder v. Richardson,* 196 Kan. 363, 411 P. 2d 670). . . ." (Emphasis added.)

The court in the above case was concerned with negative findings by a jury, but the rule is the same regarding negative findings made by a trial court.

While affirmative findings of a trial court are not to be set aside unless clearly erroneous under 60-252 (*a*), *supra,* the setting aside of a negative finding usually requires the nullification of a trial court's disbelief of evidence, or rejection of evidence. (*King v. Robbins,* 201 Kan. 748, 754-55, 443 P. 2d 308; and *Montgomery v. Manos,* 201 Kan. 302, 440 P. 2d 629.)

Abundant evidence was presented by the appellees to the effect that negotiations conducted between the appellant and the appellees were in the form of proposals, which never culminated in a binding agreement, and that all services performed by the appellant on behalf of Sunflower had been paid for in full upon billings by the appellant at the rate of $12.50 per hour.

The trial court, in effect, ruled that while the terms of a proposed multi-year employment contract had been orally agreed upon,

the parties intended that no binding contract would come into existence until the terms of the agreement were reduced to writing and signed by the parties to be bound.

Whether the parties intended to be bound absent a written executed contract is a question of fact. The conclusion reached by the trial court is supported by the evidence. The trial court held that where the parties condition a contract on its being reduced to writing and signed, there is no enforceable contract until such act is accomplished. A case directly in point is *Weil & Associates v. Urban Renewal Agency*, 206 Kan. 405, 479 P. 2d 875. There a damage action was brought for breach of contract, and the trial court sustained the defendant's motion to dismiss. This court affirmed on appeal. There, as here, the parties exchanged various forms of a contract. There, as here, the trial court ruled no enforceable contract existed. There, as here, the plaintiff contended on appeal that all terms of the contract were agreed upon and only the clerical act of formalizing those terms remained. On appeal it was held to be elemental that there must be a meeting of the minds before a contract exists. The intent there expressed was that a written formal instrument embodying the final agreement was contemplated. In the opinion this court said:

"Undoubtedly execution of a binding contract was expected, *but the intention of the parties seems clear*: They negotiated with the definite understanding the terms of any contract were not fully agreed upon; *a written formal agreement was contemplated and no valid, enforceable contract was to exist until the execution of such an instrument. The intention of the parties is controlling. In such case, where a written agreement was never executed, a binding contract never came into existence*, and we so hold, as did the trial court (see anno. 122 ALR 1217, 1232, 165 ALR 756, 759, 764). Plaintiff's position that a contract existed is not strengthened by the fact it made expenditure of time and money—these were simply normal business expenses incurred on the expectancy of ultimate success." (pp. 415, 416.) (Emphasis added.)

In the instant case the trial court found, and the record clearly discloses, an intent that no enforceable contract would exist until a written, formal instrument was drawn and executed by the parties.

The appellant admitted the contractual arrangements "were to be reduced to writing." The appellant's unilateral signing of one form of the proposed contract—after appellees had broken off negotiations and further rejected negotiations, is unavailing.

Many cases hold that whether a contract takes effect before signing is a question of fact and depends on the intent of the parties.

(*Warrior Constructors v. International U. of Op. Eng., Local 926*, 383 F. 2d 700 [5th Cir. 1967]; *Emmons v. Ingebretson*, 279 F. Supp. 558 [N. D. Iowa 1968]; *Valentin v. D. G. Swanson & Co.*, 25 Ill. App. 2d 285, 167 N. E. 2d 14; *Orient Mid-East Great Lakes Serv. v. International Export L.*, 315 F. 2d 519 [4th Cir. 1963]; *Western Machinery Company v. Consolidated Uranium Mines*, 247 F. 2d 685 [10th Cir. 1957]; *West v. Carbone*, 150 So. 2d 37 [La. App. 1963]; *Widett v. Bond Estate, Inc.*, 79 Nev. 284, 382 P. 2d 212; *Southwestern States O. & G. Co. v. Sovereign Resources*, 365 S. W. 2d 417 [Tex. Civ. App. 1963]; *Eastover Stores, Inc. v. Minnix*, 219 Md. 658, 150 A. 2d 884; *Franklin A. Snow 'Co. v. Commonwealth*, 303 Mass. 511, 22 N. E. 2d 599; *Binder v. Benson*, 225 Md. 456, 171 A. 2d 248; and *Premier Oil Refining Company of Texas v. Bates*, 367 S. W. 2d 904 [Tex. Civ. App. 1963].)

The appellant's entire argument to circumvent the executed written contract contemplated by the parties is that he performed valuable services which were accepted by the appellees. This is precisely what was litigated in the *quantum meruit* count of the lawsuit. The trial court determined the appellant did not perform any valuable services for which he was not paid. As a result, there was no performance by the appellant capable of circumventing the contemplated contract, which was to be written and executed.

The appellant contends the trial court's conclusion of law No. 5 contradicts conclusion of law No. 1. Conclusion No. 1 declares that the parties below had orally agreed on the terms of a proposed multi-year employment contract. In conclusion No. 5 the trial court stated the issue on plaintiff's first cause of action to be "whether an oral contract was made." In the same conclusion the trial court resolved that issue in favor of the appellees and against the appellant. When the full context of the trial court's conclusions is studied, it is apparent the trial court in conclusion No. 5 was speaking of an "enforceable" or "binding" contract, and not an "oral agreement." This interpretation is fortified by finding No. 7, wherein the trial court referred to the oral agreement as the "proposed employment agreement."

The term "oral agreement" was used by the trial court to describe the "proposed employment agreement" which contemplated a binding future contract to come into existence only after the proposals were formally reduced to writing and signed by the parties to be bound.

The issue on the appellant's first cause of action as framed by the pleadings is merely whether or not there was an enforceable contract between the parties. The trial court determined there was not an enforceable contract. The conclusions clearly indicate the trial judge considered the testimony, some of it conflicting, and resolved the issue against the appellant.

In the instant case the trial court saw the witnesses and heard their testimony. It ruled that while the terms of the proposed agreement were orally agreed upon, the parties had specifically contemplated and intended a formal written instrument, and held that absent such executed written document there was no enforceable contract between the parties. Accordingly, the plaintiff failed to sustain his burden of proving the existence of an enforceable contract. This ruling of the trial court is amply supported by the evidence in the record.

In the trial court the appellant argued alternatively that should the court rule no enforceable contract existed, he was nonetheless entitled to a large sum of money on the basis of *quantum meruit*. The trial court found the appellant's evidence did not establish that he had performed any work or services for which he was not paid in full, and further that the appellant's evidence did not establish the value of any services claimed to have been performed by him for which *quantum meruit* recovery was sought. The trial court concluded the appellant was not entitled to recovery under his theory of *quantum meruit*.

The appellant introduced the testimony of two expert witnesses to prove the value of his services on a *quantum meruit* basis. Their testimony was based on an estimated value for the installation work *for which plaintiff had submitted bills to the appellees.* One of the witnesses gave value testimony on the basis of $125 per day and six months time required to do the job. He was not aware the appellant had not spent six months installing the plant, and admitted his company makes neither plastic tubular pipe nor plastic sheet. He further admitted he had never been in the Sunflower plant while appellant was installing machinery. He also conceded the appellant would probably have the right to state the price he would accept for installation work. No mention was made of the work performed in making the installation by a long-time employee of F & W.

The other expert witness had been in the Sunflower plant only briefly and had no actual knowledge of what work the appellant

may or may not have done. He merely gave an estimate of the cost of installing the equipment.

The opinion testimony of these witnesses was based entirely on the value of *installation* services. The appellant admitted he had volunteered to install the equipment for a rate of $12.50 per hour; that he billed the appellees for that installation service, and was paid in full for it. Accordingly, the trial court found the appellant had not sustained the burden of proving that he had performed work or services for Sunflower for which he had not been paid in full. The trial court did not find the appellant had performed engineering services for which he was entitled to payment.

The judgment of the lower court is affirmed.