No. 57,911
No. 58,038

KENNETH D. NEWELL, *Appellant and Cross-Appellee*, v. GARY KRAUSE, PARADISE VALLEY FARMS and JAMES C. BROLLIER, *Appellees and Cross-Appellants*, and NEVADA FIRST CORPORATION, GARVEY INTERNATIONAL, INC., and CARL N. BROLLIER, *Appellees.*

(722 P.2d 530)

Opinion filed July 18, 1986.

*John R. Hamilton*, of Hamilton & Hannah, of Topeka, argued the cause and was on the briefs for appellant and cross-appellee Kenneth D. Newell.

*John J. Murphy*, of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued the cause, and *Robert L. Howard*, of the same firm, was with him on the brief for appellees Nevada First Corporation and Garvey International, Inc.

*Michael L. Jones*, of Hershberger, Patterson, Jones & Roth, of Wichita, argued the cause and was on the brief for appellee and cross-appellant, James C. Brollier, and appellee, Carl N. Brollier.

*Dan Biles*, of Gates & Clyde, Chartered, of Overland Park, was on the brief for appellee and cross-appellant Gary E. Krause.

*Richard C. Hite*, of Kahrs, Nelson, Fanning, Hite & Kellogg, of Wichita, was on the brief for appellee and cross-appellant Paradise Valley Farms, Inc.

The opinion of the court was delivered by

McFARLAND, J.: This is an action by Kenneth D. Newell, a real estate broker, against his principals (Carl N. and James C. Brollier) and others involved directly or indirectly with the purchasers of the farms, wherein plaintiff seeks damages arising from the sales of several tracts of farmland. All defendants, except James C. Brollier, were removed from the action on assorted grounds prior to submission of the case to the jury. The jury returned a verdict in favor of plaintiff and against James C. Brollier in the amount of ˙$171,733.20 actual damages and $150,000.00 punitive damages. Plaintiff and defendant James C. Brollier appeal and cross-appeal, respectively. Defendants Gary Krause and Paradise Valley Farms, Inc., have filed cross-appeals that are contingent in nature—coming up for consideration only in the event this court disturbs the trial court's removal of these defendants from the jury's consideration.

The facts involved in this action are extraordinarily complex. To set them out in full at this point in the opinion would only result in much duplication as the various issues are discussed. Still, it is necessary to provide a basic factual foundation and introduce the cast of parties before turning to the issues. Carl N. and James C. Brollier (father and son) owned a farming operation in western Kansas consisting of several farms. In 1977, plaintiff Newell entered into an exclusive six-month listing agreement to

sell six of the Brollier farms. Sales of farmland were slow at the time and plaintiff had no success selling the farms through his regular channels. Plaintiff made contact with defendant Krause in an effort to sell the farms to European investors (a market which he believed Krause had access to). At the time Krause was an employee of Builders, Inc. (not a party hereto). Builders, Inc., and all of the named corporate defendants are, or were, parts of the Wichita based Garvey organization. Through Krause, plaintiff seeks to impose liability on all the corporate defendants. Two of the farms were sold within the time period of the listing agreement to Paradise Valley Farms. Plaintiff received his commission on these. The other four farms were sold (also to Paradise Valley Farms) after the expiration of the listing agreement. In this action plaintiff contends the Brollier defendants conspired to delay the four sales in order to cheat him out of his commission. Additionally, he contends he was entitled, through an oral agreement with Krause, to fifty percent of the net profits on the resale of the farms by Paradise Valley Farms. The actual damage award consisted of a six percent commission on the sales of the four farms plus prejudgment interest.

For convenience, the issues will be grouped as to the particular defendant or defendants involved herein.

## CARL N. BROLLIER

The only issue relative to Carl N. Brollier is whether the trial court erred in dismissing plaintiff's action against him on the ground of lack of personal jurisdiction.

Carl N. Brollier had an office in Moscow, Kansas. On August 9, 1979, service of process was attempted on Carl Brollier and his wife (the latter no longer being in the action and no issue relative to her is involved in this appeal). The sheriff's return stated the following:

"(2) By leaving on the 9th day of August, 1979, for each of the within-named defendants *At their usual place of business for Carl N. Brollier by leaving w/their son, James Brollier . . . .*" (Emphasis supplied.)

K.S.A. 60-304 provides:

"The summons and petition shall be served together. The plaintiff shall furnish the clerk such copies of the petition as are necessary. Service shall be made as follows:

"(a) *Individual.* Upon an *individual* other than a minor or an incapacitated person, *by delivering a copy* of the summons and of the petition *to the individual personally or by leaving copies thereof at such individual's dwelling house or*

*usual place of abode with some person of suitable age and discretion then residing therein* or by delivering a copy of the summons and of the petition to an agent authorized by appointment or by law to receive service of process, but if the agent is one designated by statute to receive service, such further notice as the statute requires shall be given. A judge of the district court, upon a showing that service as prescribed above cannot be made with due diligence, may order service to be made by leaving a copy of the summons and of the petition at the defendant's dwelling house or usual place of abode." (Emphasis supplied.)

Clearly this statute was not complied with. Service was attempted at Carl's place of business. James was not "an agent authorized by appointment or by law to receive service of process." Plaintiff does not contend the service was proper. Rather, plaintiff contends Carl waived his defense of lack of personal jurisdiction and that the trial court erred in holding otherwise.

The record reflects the attempted service occurred on August 9, 1979. On October 2, 1979, Carl filed his answer to the petition. Therein he stated that he did "not waive but [would] expressly reserve, rely upon and affirmatively plead the following defenses: . . . *insufficiency of service of process* . . . ." (Emphasis supplied.) Apparently, plaintiff made no effort to determine the basis for this asserted defense.

The pretrial conference of this case was held on August 15, 1984. A defense asserted in the pretrial order by Carl was "lack of jurisdiction." The case was called for trial on January 21, 1985. At that time the court sustained Carl's motion to dismiss on the ground of lack of personal jurisdiction.

Plaintiff contends Carl had waived this defense. Crucial to his argument is his claimed distinction between defenses of "lack of personal jurisdiction" and "insufficiency of process." K.S.A. 60-212 provides in part:

"(a) *When defenses and objections presented.* A defendant shall serve his answer within twenty (20) days after the service of the summons and petition upon him . . . .

"(b) *How presented.* Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) Lack of jurisdiction over the subject matter, (2) *lack of jurisdiction over the person,* (3) improper venue, (4) insufficiency of process, (5) *insufficiency of service of process,* (6) failure to state a claim upon which relief can be granted, (7) failure to join a party under K.S.A. 60-219." (Emphasis supplied.)

Carl asserted "insufficiency of service of process" in his answer.

Failure to list this defense at pretrial operates as a waiver thereof, argues plaintiff. Further, plaintiff argues "lack of personal jurisdiction" was asserted for the first time at pretrial and was waived because it should have been asserted in the answer. Plaintiff argues that, if these terms had not been intended to relate to different matters, they would not have been separately listed in K.S.A. 60-212(b).

K.S.A. 60-212 was modeled after Federal Rule of Civil Procedure 12. In 5 Wright & Miller, Federal Practice and Procedure: Civil § 1351 (1969), the following is stated:

"Another problem in scope is caused by the substantial interrelationship between a defense under Rule 12(b) (2) and those under Rules 12(b) (4) and 12(b) (5), which are based on defects in the process or its service. As a result, in actual practice the rules often are used interchangeably and there is a certain amount of confusion in the reported decisions under these rules. Thus, motions to quash service of process as well as motions to dismiss for insufficiency of process or service of process have been treated as challenging the court's jurisdiction over the person. Indeed, Official Form 19, which illustrates the form of a Rule 12(b) motion, indicates how service of process and personal jurisdiction defenses often are amalgamated. In keeping with the spirit of the federal rules, the precise title of the objection should not prevent the court from considering the motion according to its substance."

In *Fish v. Bamby Bakers, Inc.*, 76 F.R.D. 511, 513 (N.D.N.Y. 1977), the court stated that a challenge to jurisdiction over the person can be regarded as including a challenge to service of process because improper service results in a lack of jurisdiction. See also *Gomez v. Karavias U.S.A. Inc.*, 401 F. Supp. 104, 107 (S.D.N.Y. 1975) and *Peterson v. Dickison*, 334 F. Supp. 551 (W.D.Pa. 1971). To hold otherwise would appear to be overly technical and to place form over substance. Clearly, Carl Brollier preserved his objection to the service of process the two times he was required formally to do so (answer and pretrial), and the trial court did not err in considering the issue as being properly before it.

Next, plaintiff argues Carl waived the defense by participating in the case for several years without reasserting the defense. This particular argument is raised for the first time on appeal and, accordingly, cannot be considered.

We conclude the trial court did not err in dismissing the plaintiff's claims as to Carl N. Brollier.

It should be noted that subsequent to the dismissal plaintiff filed a new action against Carl Brollier based upon the same

causes of action. The new action was dismissed on the basis of the running of the statute of limitations and that dismissal is the subject of a companion appeal (*Newell v. Brollier,* 239 Kan. 587, 722 P.2d 528 [1986]).

## JAMES C. BROLLIER

The first issue of James C. Brollier's cross-appeal is whether the trial court erred in holding Kenneth Newell's tort claims were assignable.

Kenneth Newell filed for bankruptcy in June of 1978 and was discharged on December 7, 1978. The action herein was filed August 3, 1979. On motion of the bankrupt (Newell), the trustee transferred the causes of action back to Newell for the consideration of $10,000 (Newell claimed not to have discovered his causes of action until after being discharged in bankruptcy). James Brollier contends the causes of action sounding in tort (conspiracy, fraud, and tortious interference with contract) are non-assignable as a matter of Kansas law and therefore Newell is not the real party in interest.

The parties involved in this issue extensively reviewed all statutes and cases involving the broad area of assignability of torts arising since Kansas became a state. Attention is particularly drawn to General Statutes of Kansas of 1868, ch. 80, § 26, which stated:

"Every action must be prosecuted in the name of the real party in interest, except as otherwise provided in section twenty-eight; but this section shall not be deemed to authorize the assignment of a thing in action, not arising out of contract."

This paragraph remained a part of the law (as G.S. 1949, 60-401) until 1963, when it was amended. In 1963 the legislature repealed the former code of civil procedure (ch. 60 of the General Statutes of 1949 and of the General Statutes Supplement of 1961). The old § 26 (G.S. 1949, 60-401) was incorporated into what is now K.S.A. 60-217(a). L. 1963, ch. 303. K.S.A. 60-217(a) reads:

"*Real party in interest.* Every action shall be prosecuted in the name of the real party in interest; but an executor, administrator, guardian, conservator, trustee of an express trust, receiver, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his or her own name without joining with him or her the party for whose benefit the action is brought; and when a statute so provides, an action for the use or benefit of another shall be brought in the name of the state of Kansas."

K.S.A. 60-217(a) omits the last two clauses of § 26.

This case appears to be an inappropriate vehicle for an in-depth discussion on the status of the law on assignability of torts. The broad public policy considerations inherent in this area of the law are wholly absent from the case before us. Newell is not an outsider purchasing an injured person's tort action. Newell was a party to the events giving rise to the claimed causes of action and filed this action on August 3, 1979, seeking recovery for his damages. Newell, because of his 1978 bankruptcy action, had to clear any interest of the trustee before proceeding with this suit. He regained full right to proceed with the pending litigation by payment of $10,000 to the trustee. Had the trustee determined the causes of action to be without value, the trustee could have abandoned them whereby all interest would have reverted back to Newell.

We conclude that whereas the transfer to Newell by the trustee may have technically constituted an assignment, it is not the type of transfer within the purview of law on assignability of tort claims. The trial court did not err in permitting Newell to proceed in the action before us.

For his next issue, James Brollier claims the giving and refusal to give a number of instructions were erroneous. Nothing would be gained in setting forth in this opinion the various assertions made relative to the instructions. It is sufficient to state we have carefully considered each claim of error relative to the instructions and find each to be without merit. It should be noted that a number of the claims go to the sufficiency of the evidence question involved in the next issue.

We turn then to the major issue involving James Brollier—the sufficiency of the evidence supporting the verdict. More particularly, was there sufficient evidence of fraud or conspiracy to defraud to support the verdict?

Fraud " 'in its general sense, is deemed to comprise anything calculated to deceive, including all acts, omissions, and concealments involving a breach of legal or equitable duty, trust, or confidence justly reposed, resulting in damage to another . . . .' " *Goben v. Barry*, 234 Kan. 721, 728, 676 P.2d 90 (1984), quoting *Augusta Bank & Trust v. Bloomfield*, 231 Kan. 52, 64, 643 P.2d 100 (1982).

Honesty and fair dealing are presumed; therefore, the one

charging fraud must prove it by clear and convincing evidence. *Credit Union of Amer. v. Myers*, 234 Kan. 773, 778-80, 676 P.2d 99 (1984).

Clear and convincing evidence is not a quantum of proof, but rather a quality of proof; thus, the plaintiff establishes fraud by a preponderance of the evidence, but this evidence must be clear and convincing in nature. On review, this court considers only the evidence of the successful party to determine whether it is substantial and whether it is of a clear and convincing quality. *Fox v. Wilson*, 211 Kan. 563, 578-79, 507 P.2d 252 (1973); *In re Estate of Shirk*, 194 Kan. 671, 672, 401 P.2d 279 (1965).

The common definition of clear and convincing evidence was iterated in *Nordstrom v. Miller*, 227 Kan. 59, 65, 605 P.2d 545 (1980), as follows:

" '[T]he witnesses to a fact must be found to be credible; the facts to which the witnesses testify must be distinctly remembered; the details in connection with the transaction must be narrated exactly and in order; the testimony must be clear, direct and weighty; and the witnesses must be lacking in confusion as to the facts at issue.' *Modern Air Conditioning, Inc. v. Cinderella Homes, Inc.,* 226 Kan. 70, 78, 596 P.2d 816 (1979)."

The evidence in the case before us constitutes an inundation of dates of sales and resales of the many parcels of land comprising the farms involved, dates of meetings and conversations, and prices paid on initial sale and resale, etc. Much of the evidence had little bearing on plaintiff's claims against this defendant. Winnowing the facts is vital to the determination of this issue.

James C. and Carl Brollier were the owners of six farms located in western Kansas. They desired to sell these farms and, in 1976, contacted plaintiff Newell to serve as their real estate broker. Newell was unable to sell any of the farms through his regular channels. In a conversation with an acquaintance (George Stuckey), he learned of Gary Krause, who was represented to have contacts in the lucrative European investors' market. Krause was employed by Builders, Inc., a Garvey corporation. At that time Krause had little experience in the field. Newell, Krause, and Stuckey discussed a partnership arrangement whereby all three could profit on a grand scale from the hoped-for Brollier farm sales. They viewed the farms in 1976. No such three-way arrangement was finalized. Newell, apparently operating on the half-a-loaf was better theory, did make an

agreement with Krause whereby Newell would split his six percent commission with Krause on any Brollier farm for which Krause obtained European buyers. Additionally, Newell claims to have also had an agreement with Krause whereby he would receive fifty percent on the net profits made by Krause's superiors on any resales of the Brollier farms.

In 1977 Newell obtained six-month exclusive listing agreements on the six Brollier farms. Newell's commission was to be six percent of the selling price and the agreements were for six months with 60-day extension options. Two of the farms were sold with Newell receiving his six percent commission, and he shared the same with Krause. Both of these farms were sold to Paradise Valley Farms, Inc., a newly created Garvey corporation, whose business was sale of farmland to European investors.

James Brollier had at least two private meetings with Krause during the time the exclusive listing agreements were in effect. The remaining four farms were sold (also to Paradise Valley Farms and from there resold to European investors) within two to four months after the expiration of the six-month exclusive listing agreements. Newell did not receive a commission on these sales. The sales to Paradise Valley Farms were essentially "paper" transactions. These "sales" did not occur until Paradise Valley Farms had definite commitments from European buyers. Substantial markups on prices occurred as the land flowed through Paradise Valley Farms.

The European investors wanted package deals, including farm management services. James Brollier ultimately became the farm manager, on a lucrative basis, on each of the farms sold to the European investors. When certain delinquencies occurred in payments to Brollier for his services, Brollier and Krause went to Europe and obtained Brollier's money. In late 1978 Krause left his employment, and in 1979 Krause and James Brollier formed a corporation concerned with the selling of farmland to European investors.

From the evidence the jury could well have concluded that James Brollier would have profited from delaying the sales past the time of the listing agreement (thereby saving payment of Newell's six percent commission); that he did conspire to manipulate dates of sales to accomplish this purpose; and that, additionally, he was negotiating secretly with Krause to ensure

his management contract was a part of the package deal offered the European buyers.

We apply the previously stated standards and conclude there was sufficient evidence to prove fraud or conspiracy to defraud.

For his final issue, Brollier contends that the evidence, as a matter of law, established Newell breached his fiduciary duty to the Brolliers and was thereby barred from receiving any commission on the sales.

In his claim against Krause and the corporate defendants, Newell contended he had an agreement with Krause (imputed to all corporate defendants in some manner) whereby Newell was to share in the profits obtained by Paradise Valley Farms on the marked-up prices charged the foreign investors on the Brollier farm sales. This aspect of the case will be discussed more fully later in the opinion. Newell claims he told the Brolliers he had an arrangement whereby he could profit on the resales and that they had no objection—their only interest being to receive satisfactory initial sale prices. The Brolliers denied any such knowledge.

The jury was properly instructed on the duties of a fiduciary as follows:

"You are instructed that a real estate broker has a fiduciary obligation to his principal requiring good faith on his part to make disclosure to his principal of all material matters relating to the transaction. Such duty requires disclosure of all compensation, either received or to be received by the broker.

"A real estate broker is not entitled to compensation if he fails to disclose to his principal any personal knowledge which he possesses relative to matters which are or may be material to his principal's interest or if he acts adversely thereto, either for the purpose of aiding another or with the design of securing a secret profit for himself."

Having been so instructed, the jury apparently chose to believe Newell had made sufficient disclosure to the Brolliers of his apparent conflict of interest. Appellate courts cannot nullify a jury's disbelief of evidence, nor can they determine the persuasiveness of evidence which a jury may have believed. *Short v. Sunflower Plastic Pipe, Inc.,* 210 Kan. 68, 74, 500 P.2d 39 (1972); *Schroeder v. Richardson,* 196 Kan. 363, 411 P.2d 670 (1966).

We conclude this issue is without merit.

### NEVADA FIRST CORPORATION AND GARVEY INTERNATIONAL, INC.

The primary issue raised by plaintiff relative to these corporate

defendants is whether the trial court erred in granting summary judgment in their favor.

Plaintiff claimed throughout this litigation that Krause was the agent of all of the corporate defendants. Therefore, the agreement plaintiff claims he made with Krause whereby he, Newell, would receive fifty percent of the profits made on resales of the Brollier farms was the agreement of all corporate defendants.

The case herein was filed on August 3, 1979. Pretrial was held on August 15, 1984, with the agreed-upon pretrial conference order being filed on November 19, 1984. Trial was scheduled to commence January 21, 1985. On December 10, 1984, these defendants filed a motion for summary judgment based upon alleged failure of any evidence of agency by Krause to act for these two corporate defendants. On January 3, 1985 (18 days before trial), plaintiff responded to the motion and for the first time added an alternative ground for liability of these two defendants—alter ego; that is, that Paradise Valley Farms, Inc., was the alter ego of these two defendants. Previously no attempt to pierce the corporate veil had been made by plaintiff. The trial court refused to consider this late-blooming theory and we find no abuse of discretion in that regard.

Did the trial court err in entering summary judgment on the grounds of failure of evidence of agency? We believe not. Newell relies heavily on actions and statements of Krause in support of his contention Krause was the agent of these two corporations. Krause, from time to time, used Nevada First stationery in corresponding with potential farmland buyers. In fact, Krause's only connection with Nevada First was that his employer (Builders, Inc.) was attempting to sell some Nevada farm property owned by Nevada First.

Krause had not been an employee of Garvey International since June 1, 1975. Krause had never been an employee of Nevada First. At the time of the alleged agreement, Krause was an employee of Builders, Inc. The Brollier farm properties were sold to Paradise Valley Farms. It is true the corporate defendants are interrelated. That does not, per se, make the agent of one the agent of all through a process of osmosis. There must be evidence of agency or else the corporate veils must be pierced in order to impose liability for any acts of Krause upon these two corporate defendants. Discovery had long been completed, a

pretrial order had been entered, and the case was soon to go to trial. We conclude the trial court did not err in entering summary judgment in favor of these two defendants.

## GARY KRAUSE AND PARADISE VALLEY FARMS, INC.

These defendants moved for and received directed verdicts in their favor at the close of plaintiff's evidence. For his first issue, plaintiff contends the trial court abused its discretion in refusing to permit him to amend (in response to the motion for directed verdict) the pretrial order to allege these defendants conspired with the Brolliers to cheat plaintiff out of his six percent commission on the four farms. The pretrial order charged conspiracy only against the Brolliers.

K.S.A. 60-215(b) provides:

"*Amendments to conform to the evidence.* When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence."

We have carefully reviewed the contentions made by plaintiff in this regard and find no abuse of judicial discretion in refusing to allow the amendment.

The next issue is whether the trial court erred in limiting discovery of certain records of Paradise Valley Farms. Plaintiff filed a discovery request seeking virtually all of the corporation's financial records regardless of whether or not they related to the Brollier farm sales. The trial court entered an order restricting the scope of discovery to records concerning the Brollier farm sales. We find no abuse of discretion in this order.

Next, we turn to the primary issue regarding these defendants. Did the trial court err in entering a directed verdict at the close of the evidence on behalf of these defendants? In making their motions for directed verdicts, these defendants asserted alternative grounds. The trial court granted the motions on the ground plaintiff had failed to show, with sufficient particularly, his

claimed damages. That is, plaintiff contended that he was entitled to fifty percent of the net profits Paradise Valley Farms had made on the sales but had only shown gross profit—purchase prices and resale prices. The trial court believed that plaintiff's failure to show the expenses incurred by Paradise Valley Farms was fatal to plaintiff's case. We do not agree. Evidence of the expenses was a matter of defense.

There is, however, a valid ground for directing the verdicts herein. By plaintiff's own testimony, his agreement with Krause relative to sharing profits was made in late 1976. Plaintiff further testified that by the middle of 1977 (before any of the sales occurred) it became apparent to him Krause was not going to proceed under the agreement. Plaintiff then, in the summer of 1977, negotiated with a Marty Burke and shortly thereafter entered into an agreement with Burke wherein the two of them would form their own company to sell farmland to European investors. On behalf of the new venture, plaintiff went to Europe and contacted prospective investors—including some of those with whom Krause was negotiating. Had this proven successful, Krause and Paradise Valley Farms would have been shut completely out of the sales of the Brollier farms and Burke and plaintiff would have shared the net profits on the sales.

The agreement claimed by Newell was oral and had no term. Therefore, it was terminable at will. Plaintiff testified he knew Krause was dissatisfied with their agreement and that he (plaintiff) felt he was, in the summer of 1977, free to enter into an agreement with someone else. By plaintiff's own testimony it is shown Krause conveyed his intention to end any agreement they had relative to profits and that plaintiff believed and acted in accordance with the agreement having been terminated—indeed, plaintiff went into direct competition with Krause for the same prospective European customers for the Brollier lands. Clearly, any agreement between them was terminated prior to the sales of the farms.

We conclude the district court did not err in entering directed verdicts in favor of Krause and Paradise Valley Farms although the stated ground therefor was incorrect.

By virtue of the results heretofore reached, other issues raised need not be determined.

The judgment is affirmed.

LOCKETT, J., concurring and dissenting: The majority correctly determined all issues except when they found that the agreement between the plaintiff and Krause had been terminated by the actions of the parties. Whether or not the agreement had been terminated by the parties' actions is a question of fact to be determined by the jury. The trial judge's action of directing a verdict for another reason kept the jury from reaching that question. Determination of the facts is a function for the jury, not an appellate court. The majority's action deprives the plaintiff of his constitutional right to a jury trial. The plaintiff should be granted a new trial on that issue.

HERD, J., joins in the foregoing concurring and dissenting opinion.