Ted and Debra SCHEUFLER, husband and wife; Paul and Elva Scheufler, husband and wife, Harvey Wilhaus; Alice M. Richmond; Janice Allen; Mabel V. Colle Trust; Kenneth D. and Eileen P. Knapp, husband and wife; Peirce Knapp Farms, Inc., by Walter C. Peirce, President; Donald and Sharon Hubbard, husband and wife; and Violet Stockham, Plaintiffs,

v.

GENERAL HOST CORPORATION, a New York Corporation, Defendant.

Civ. A. No. 91–1053–FGT.

United States District Court, D. Kansas.

May 16, 1995.

Casey R. Law, Bremyer & Wise, P.A., McPherson, KS, H. Lee Turner, H. Lee Turner, P.A., Great Bend, KS, for Ted Scheufler, Debra Scheufler, Paul Scheufler, Elva Scheufler, Harvey Wilhaus, Alice M. Richmond, Mable V. Colle, and Violet Stockham.

H. Lee Turner, H. Lee Turner, P.A., Great Bend, KS, for Kenneth D. Knapp.

Casey R. Law, Bremyer & Wise, P.A., McPherson, KS, H. Lee Turner, H. Lee Turner, P.A., Great Bend, KS, Kenneth E. Peirce, Turner & Boisseau, Chtd., Hutchinson, KS, for Eileen Knapp and Peirce Knapp Farms, Inc.

Thomas D. Kitch, Fleeson, Gooing, Coulson & Kitch, L.L.C., Wichita, KS, William R. Sampson, Bill J. Hays, Paul W. Rebein, Shook, Hardy & Bacon, Overland Park, KS, Rodney Zerbe, Thomas F. Munno, William F. Downey, Dechert, Price & Rhoads, New York City, for General Host Corp.

### MEMORANDUM AND ORDER

THEIS, District Judge.

This is an action for damages resulting from salt pollution of the Cow Creek Aquifer by the defendant. The matter has been the subject of a number of motions, dispositive and otherwise, which the court has addressed. Trial is set for June 27, 1995, and is expected to last at least three weeks. The court held a status conference on March 29, 1995, for the purpose of clarifying the issues and procedures for trial. After discussion with the attorneys, the court asked each side to brief the issues of how to present the issue of punitive damages and whether any factual issues remain regarding the plaintiffs' inability under state law to receive irrigation permits.

The facts surrounding this case have been discussed in this court's previous orders in this case as well as in *Miller v. Cudahy*, 592 F.Supp. 976 (D.Kan.1984),. For purposes of addressing the issues now before the court, the briefest of recitations of fact and procedural history will suffice. This is the fourth in a series of nuisance actions involving salt pollution by the American Salt plant in Lyons, Kansas. Operations of the American Salt plant caused severe pollution of the Cow Creek Aquifer, leaving its water unsuitable to use for irrigation. The *Miller* case was tried to the court, and plaintiffs, farmers whose land lies over the aquifer, recovered actual damages and $10 million in punitive damages under Kansas nuisance law. *Miller*, 592 F.Supp. 976. As the polluted water in the aquifer has flowed downstream, other landowners have brought suit.

By its Memorandum and Order of March 8, 1995, the court held that collateral estoppel applies in this case, thereby precluding relitigation of such issues as the process of salt mining, the polluting of the Cow Creek Aquifer caused by operations of American Salt, and defendant's legal responsibility for that pollution. (Doc. 252). In a separate order, dated March 20, 1995, the court granted in part and denied in part defendant's motion for summary judgment. (Doc. 258).

■ Defendant moves for separate trials on the issues of actual damages and punitive damages. (Doc. 267). The plaintiffs respond first that the defendant is barred by collateral estoppel from contesting its liability for punitive damages. The court concludes that plaintiffs' suggested application of collateral estoppel would be improper and would be fundamentally unfair to the defendant. First, there have been material changes in factual circumstances since the *Miller* trial, most notably defendant's efforts at clean-up, which affect the defendant's liability for punitive damages. Second, there has been a material change in Kansas law regarding burden of proof. An award of punitive damages must now be based on

clear and convincing evidence. K.S.A. § 60–3702(c). As burden of proof is a substantive matter, the state law applies. *Whittenburg v. L.J. Holding Co.*, 830 F.Supp. 557, 565 n. 9 (D.Kan.1993). Despite language in Kansas cases regarding the meaning of the clear and convincing evidence standard,[1] the court rejects plaintiffs' argument that the change in burden of proof is a mere technicality. Furthermore, there is no support for plaintiffs' argument that the court found the evidence in *Miller* met the clear and convincing standard, and the court declines plaintiffs' invitation to find now, based on its memory of the *Miller* case some ten years ago, that the evidence supporting the punitive damages award was of a clear and convincing quality.

For the foregoing reasons, the court concludes that defendant is not collaterally estopped from contesting liability for punitive damages. However, pursuant to this court's order of March 8, 1995, collateral estoppel will operate to preclude the defendant from relitigating the facts found at the first trial which led the court to award punitive damages.

■ The court will now consider defendant's motion to bifurcate the trial of this matter, which the plaintiffs oppose. According to defendant's proposal, the first phase of trial would deal with liability for actual damages and the amount of actual damages, if any. If the jury finds for the plaintiffs in the first trial phase, the matter would proceed to the second phase. The second phase would deal with punitive damages. The same jury would hear and decide both phases. Defendant argues that separate trials would promote the interests of fairness and judicial economy.

■ Federal Rule of Civil Procedure 42(b) provides in relevant part that "[t]he court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial ... of any separate issue...." The trial court has considerable discretion in determining how a trial is to be

1. In *Newell v. Krause*, 239 Kan. 550, 557, 722 P.2d 530 (1986), a fraud case, the Kansas Supreme Court stated: "Clear and convincing evidence is not a quantum of proof, but rather a quality of proof; thus, the plaintiff establishes fraud by a preponderance of the evidence, but this evidence must be clear and convincing in nature."

conducted, and a decision whether to bifurcate is subject to review for abuse of discretion. *Angelo v. Armstrong World Indus., Inc.,* 11 F.3d 957, 964 (10th Cir.1993). In deciding whether to bifurcate, the court is to consider whether the interests of efficiency and convenience favor bifurcation, whether the issues are clearly separable, and whether bifurcation is fair to both parties. *Id.* Regardless of the issues of efficiency and separability, however, it is always an abuse of discretion to bifurcate a trial when to do so is unfair. *Id.*

Bifurcating trial of this matter would be conducive to judicial economy and efficiency. Because of the court's previous rulings, the actual damages determination as to each plaintiff turns on three disputed issues: (1) whether salt pollution from the American Salt plant has reached the plaintiffs' properties; (2) whether there is a superseding cause for the plaintiffs' inability to irrigate (i.e., other sources of pollution and the permit issue discussed below); and (3) the amount of plaintiffs' damages. The determination of liability for punitive damages involves other issues, most importantly the wanton and malicious nature of defendant's conduct toward the plaintiffs. The jury would not need to consider these issues if no actual damages are awarded, which would save trial time and the expense of putting on the additional evidence. If a second phase becomes necessary, no duplication of evidence would be required because the same jury would hear both phases of trial. The plaintiffs argue that time will be saved only if the defendant prevails at the first stage of trial. However, it is always the case when issues are tried separately that the time and expense saved depends on the jury's findings at the first stage.

As for separability, the issues for determination of punitive damages are distinct from the issues involved in the actual damages determination. Trial of the punitive damages issue would require different witnesses and different exhibits. To the extent that there is overlap of witnesses, the substance of their testimony would be different. The determination of punitive damages liability will require presentation of a great deal of

historical information concerning the operations of the American Salt plant and the previous litigation, which will not be necessary to the actual damages determination. As defendant has noted, the evidence on actual damages will focus on the plaintiffs in this case and their properties. Dealing with these issues in separate trial phases will reduce confusion.

Bifurcation would also prevent possible prejudice to the defendant. As noted above, some evidence which is irrelevant to the determination of actual damages is highly relevant to the issue of punitive damages. Presentation of such evidence only after a determination of actual damages would eliminate any possibility that the jury could consider the evidence for an improper purpose. The court seeks to be particularly cautious in this case because collateral estoppel will preclude the defendant from contesting many of the plaintiffs' allegations regarding punitive damages. There is no reason to believe that bifurcation would prejudice the plaintiffs.

In looking at the issues of fairness and economy, the court has considered the likely effect of the past litigation on the outcome of this case. The court notes that a large punitive damages award in this case is unlikely as the defendant has already paid $10 million in punitive damages for the same wrongful conduct at issue in this case. This court, in determining the amount of punitive damages to be ordered in *Miller,* considered the ongoing and far-reaching impact of the pollution. *Miller v. Cudahy,* 592 F.Supp. 976, 1007–08 (D.Kan.1984). The court specifically considered the impact that the pollution would have as the aquifer flowed downstream. *Id.* at 999. Although the prior award of punitive damages does not preclude an award of punitive damages for the same conduct in this case, *McDermott v. Kansas Public Serv. Co.,* 238 Kan. 462, 465–66, 712 P.2d 1199 (1986), the plaintiffs agree that the amount of the prior punitive damages award should be considered in determining the amount of punitive damages to be awarded in this case.

■ Plaintiff argues that the Kansas punitive damages statute, K.S.A. § 60–3702, requires punitive damages liability to be determined in the same trial phase as liability for

actual damages. Even assuming this is true, the matter is clearly procedural. The federal courts need not follow the state procedure.

Plaintiff next argues that the suggested bifurcation is unprecedented. This may be the case, but the court is willing to venture into uncharted waters when its course is authorized by the Federal Rules of Civil Procedure and furthers the interests of fairness and judicial economy. Furthermore, as the parties are aware, this is not an ordinary case in any respect. The case is complicated in its factual issues and its procedural history. Trying the issues of actual damages and punitive damages separately will serve to simplify matters.

For the foregoing reasons, the court grants defendant's motion for separate trials on issues of actual and punitive damages.

As for the permit issue, the defendant contends that it is not liable for damages resulting from plaintiffs' inability to irrigate because the plaintiffs have never obtained irrigation permits. The plaintiffs did not apply for irrigation permits before 1990. In 1990, the Big Bend Ground Water Management District issued a moratorium on new irrigation permits in plaintiffs' area, making it impossible for plaintiffs to obtain such permits. The defendant argues that the moratorium is a superseding cause of the plaintiffs' inability to irrigate, that regardless of any pollution underlying their land, plaintiffs are prohibited by state law from irrigating. The plaintiffs contend that the moratorium was issued precisely because of the salt pollution and the efforts at its clean-up. The defendant has previously moved for summary judgment on this issue, and the court denied the motion because a genuine factual issue remained as to whether the defendant's conduct caused the moratorium. The plaintiffs further contend that applying for permits before 1990 would have been futile because the pollution made the water unusable, as found in *Miller*.

■ The plaintiffs now seek a ruling as a matter of law on the permit issue. The defendant objects to what is essentially a dispositive motion filed out of time. The court, however, is more concerned with the merits of the request. The plaintiffs argue that the defendant is barred by collateral estoppel from asserting in its defense the plaintiffs' failure to obtain permits before the moratorium was issued. In *Miller v. Cudahy*, 656 F.Supp. 316, 329–331 (D.Kan.1987), the court held that the plaintiffs' failure to take the futile step of applying for permits to irrigate with unusable water did not bar their claim for lost crop profits. The court cannot apply collateral estoppel to this issue because the ruling in *Miller* dealt with a different set of plaintiffs on different parcels of land. It is not clear when, if ever, the salt pollution reached the groundwater under these plaintiffs' properties. Therefore, it cannot be said whether these plaintiffs could have benefitted from applying for irrigation permits before 1990 or whether such applications would have been futile.

■ Finally, the plaintiffs argue that their inability to obtain permits since 1990 is not an intervening cause of their inability to irrigate because the defendant's conduct was the cause of the moratorium. The plaintiffs have presented no evidentiary support for this argument. The only evidence in the record, then, is what was presented in connection with the defendant's motion for summary judgment. The court denied that motion because genuine issues of material fact remain. Accordingly, there is no basis for the court to rule as a matter of law in favor of the plaintiffs on this issue.

**IT IS BY THIS COURT THEREFORE ORDERED** that defendant's motion for separate trials on the issues of actual and punitive damages (Doc. 267) is hereby granted.

**IT IS FURTHER ORDERED** that plaintiffs' motion for a ruling as a matter of law on the permit issue (Doc. 266) is hereby denied.