**SCHOOL SUPPLY SERVICE COMPANY,**
Appellant,

v.

**J. H. KEENEY & CO., Inc., Appellee.**

No. 25441.

United States Court of Appeals
Fifth Circuit.

April 8, 1969.

Michael R. Walsh, Anderson, Rush, Lowndes & Peirsol, Orlando, Fla., for appellant.

G. Gale Robertson, Jr., Chicago, Ill., Wm. B. Mesmer, George T. Eidson, Jr., of Akerman, Senterfitt, Eidson, Mesmer, Robbinson & Wharton, Orlando, Fla., J.

Thomas Cardwell, Orlando, Fla., on the brief, for appellee.

Before THORNBERRY and SIMPSON, Circuit Judges, and SUTTLE, District Judge.

SUTTLE, District Judge:

Plaintiff, School Services, Inc., is a vending machine operator whose business is to place machines in schools. Appellant, School Supply Service Co., contracts the manufacture of vending machines to businesses who operate manufacturing plants; and then sells them, under its own trade name, to vending machine operators. The machines involved here were manufactured by appellee, J. H. Keeney & Co., Inc.

Plaintiff sought damages from appellant for the breach of either an express warranty or an implied warranty by appellant or, in the alternative, rescission and cancellation of the sale of fifty school supply vending machines sold to plaintiff by appellant and alleged to be unworkable and defective. Appellant filed a Counterclaim on account against plaintiff; and an Amended Third Party Complaint against the manufacturer of the machines, appellee, alleging that appellee had breached an express warranty against mechanical failure and that appellee and not appellant was therefore primarily liable to the plaintiff for any judgment rendered against it. Prior to trial, appellant further alleged the breach by appellee on the sale of these machines to appellant of implied warranties of merchantability and of fitness for a particular purpose.

The district court, after a non-jury trial, held that appellant, School Supply Service Co., was liable to plaintiff for the full purchase price of the machines ($10,345.50) with interest from August 22, 1963; that plaintiff was liable to appellant for school supplies furnished ($1,298.37) with interest from March 21, 1964; and that appellee, J. H. Keeney & Co., Inc., was not liable on the merits to either plaintiff or appellant.[1]

1. Appellant does not appeal the judgment rendered against it in favor of plaintiff, nor does plaintiff appeal the judgment against it on the counterclaim.

The evidence shows that prior to 1962, the R. J. Tennes & Co., (hereinafter referred to as TENNES), a corporation not a party to this law suit, had been building a machine for appellant which was marketed under the name "Little Store." In 1962 appellant desired to make a change in the coin mechanism of the "Little Store" machine from a slide injector to a coin drop mechanism, requiring considerable redesign of the machine. To accomplish this redesign TENNES hired or contracted with one Frank Murphy,[2] a free-lance designer. During this period of time R. J. Tennes became Vice President and General Manager of appellee, in addition to continuing to operate his own company. TENNES contracted with appellee for the manufacture of the redesigned machines. Early in 1963, Mr. Tennes terminated his corporate affiliation with appellee, but continued to run his own company from appellee's plant as a tenant. In June, 1963, TENNES, by agreement of all, turned its contract with appellant over to appellee. Both appellant and appellee were aware of design problems which were preventing the machines from working properly. Appellee continued to try to correct these problems.[3] The Vice President of appellee wrote a letter to Mr. Basler, the President of appellant, confirming his order with appellee for the manufacture of these machines.[4] During the course of that summer the machines were put into production even though the problems had not been completely corrected. The fifty machines which are the subject of this law suit were shipped to the plaintiff. In October, 1963, a conference was held between appellant and appellee to determine what was meant by the guarantee as expressed in the June, 1963, letter. On October 17, 1963, Mr. Basler wrote appellee to confirm the discussion and set out the interpretation of the guarantee contained in appellee's June 7 letter which the parties presumably agreed upon.[5] While purporting to resolve whatever controversy there was regarding this guarantee, this letter is now interpreted by the parties in contrary ways, each supporting his side of the instant controversy.

2. Murphy was to be paid by TENNES 2% of the gross receipts as a royalty on a patent covering one aspect of the machine.

3. Mr. Murphy, who at no time was employed by appellee, worked with appellee until May, 1963, when he refused to continue to try to make his design work.

4. The pertinent part of this June 7, 1963, letter from appellee to appellant is:
"Dear Mr. Basler:
"Thank you for your letter of 6 June 1963, and accompanying order. * * *
"With reference to the requirements of paragraph 5 of your letter we wish to assure you as follows:
(a) all machines produced by us under this purchase order will be unconditionally guaranteed for one year against mechnical failure. * * *"

5. The pertinent part of this letter reads as follows:
* * * * *
"There has been no change in our interpretation of the unconditional guarantee for one year against mechanical failures from the same arrangement which we had with R. J. Tennes & Co. All defects in materials and workmanship such as broken welds, broken parts, and poorly assembled machines are covered by this guarantee. In addition, if any of our dealers or school customers are unable to adjust any drawer to operate properly, we will replace such drawers with new units and authorize the return of such defective drawers for necessary adjustment by the J. H. Keeney & Co., Inc. The only cost involved to your company should be the parcel post (or freight) expense of shipping drawers back and forth plus your shop time to adjust or repair the defective units.
"This guarantee, of course, assumes that the machine at its inception is workable for purposes originally intended. Our approach at the moment lies in this area, and solution to these problems is paramount and does not basically have any relation to the guarantee afforded our company by you, and passed on to our purchasers.
"I hope that the above clarifies this problem."

The District Court held as follows:

"6. Keeney expressly warranted the machines to Supply against mechanical failure; however, the understanding of the parties, as reflected in the letter written October 17, 1963, by Mr. Basler to Mr. Weinand of Keeney, was to the effect that the express warranty made by Keeney covered only failure due to defective manufacture of parts and '(assumed) that the machine at its inception (was) workable for purposes originally intended.' The letter goes on to say: 'Our approach at the moment lies in this area and solution to these problems' (presumably referring to the design problems already encountered) 'is paramount and does not basically have any relation to the guarantee afforded our company by you, and passed on to our purchasers.' The only reasonable conclusion, and this Court so finds, is that Keeney did not adopt the design of the machine as its own design, and excluded any warranty with respect to the design.

"7. Since all failures were a result of faulty design and were not due to faulty manufacture of the machines or their parts, and since Keeney expressly disavowed any guarantee of design in its warranty to Supply, as that agreement has been construed, Keeney is not liable to Supply."

Appellant cites this as error, claiming that appellee adopted the design of the machines in question and is therefore liable.

■■■ While the UCC, which governs this case, has strengthened the buyers rights, it did not change the common law rule that in order for there to be an implied warranty of the sufficiency of a design the seller must be responsible for the design, either by initiation or adoption.[6] The District Court's holding in this regard cannot be said to be either clearly factually erroneous[7] or to incorrectly apply the law.[8] The judgment appealed from must therefore be

Affirmed.

---

6. U.C.C. § 2–316, *Comment* 9, provides in part: "The situation in which the buyer gives precise and complete specifications to the seller is not explicitly covered in this section, but this is a frequent circumstance by which the implied warranties may be excluded."

*See also*, Standard Packaging Corp. v. Continental Distilling Corp., 378 F.2d 505 (3d Cir. 1967).

7. Fed.R.Civ.P. 52(a).

8. *See, e.g.*, Morse Boulger Destructor Co. v. City of Saginaw, 264 F.2d 847 (6th Cir. 1959); Economy Fuse & Mfg. Co. v. Raymond Concrete Pile Co., 111 F.2d 875 (7th Cir. 1940); Turkish State Rys. Administration v. Vulcan Iron Works, 153 F.Supp. 616 (M.D.Pa.1957); 46 Am.Jur. Sales § 352 (1943). *Cf.*, Annot., 6 A.L.R.3d 1394 (1966).