**Henrietta HENDRICKS, Plaintiff,**

v.

**COMERIO ERCOLE, Defendant.**

**Civ. A. No. 87–4202–S.**

United States District Court, D. Kansas.

April 29, 1991.

506

Gary L. Conwell, Tom C. Kelley, Ochs and Kelley, P.A., Topeka, Kan., for plaintiff.

Larry B. Spikes, Martin, Pringle, Oliver, Wallace & Swartz, Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on defendant's motion for summary judgment. In this case, plaintiff Henrietta Hendricks ("plaintiff") seeks damages from defendant Comerio Ercole ("defendant" or "Comerio"), an Italian manufacturer of component parts of a wire calender machine, for injuries to her hand (including the loss of four fingers) while using a wire calender machine during her employment at the Topeka Goodyear Tire & Rubber Company Plant in July 1985. Plaintiff alleges that Comerio was negligent, that it breached certain implied warranties, and that Comerio is strictly liable for the allegedly defective design of the machine.

A moving party is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir.1985). The requirement of a "genuine" issue of material fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing an absence of a genuine issue of material fact. This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."

*Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider factual inferences tending to show triable issues in the light most favorable to the party opposing the motion. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985).

The court finds that relevant facts (which are undisputed unless otherwise specified) are as follows. It is undisputed that on September 15, 1987, the Goodyear Tire and Rubber Company ("Goodyear") issued specifications for the purchase of certain components for a four-roll wire calender machine to be manufactured by Comerio Ercole ("Comerio"). The purchase order Goodyear submitted to Comerio identified the parts and components to be manufactured by Comerio and supplied to Goodyear. Although Goodyear's purchase order specifies that "all drilled rolls to Goodyear specified contour, finish and hardness," it is essentially uncontroverted that Goodyear ordered and paid for a wire calender machine in a "naked" condition—*i.e.*, without numerous components and accessories necessary for operation in Goodyear's Topeka plant. Specifically, although Goodyear specified and Comerio shipped a four-roll inclined "Z" calender machine (and included specifications for the rolls themselves), Goodyear's specifications did not include the drive motor, pricker rolls, safety devices or the numerous accessories necessary to place the calender into operation. The parties dispute whether an impression roll was provided. Goodyear intended to and did reserve the duty of providing the remaining components, drives and safety devices so the machine could be customized to its specific needs. It is undisputed that

Comerio gave no express warranty to Goodyear at the time of contracting for the component parts manufactured by Comerio. The parties dispute whether Comerio had reason to know of any particular purpose for which the contracted-for items were required.

The basic calender was delivered to Goodyear's Topeka plant in 1972 in conformity with Goodyear's specifications. Goodyear added some component parts; it is disputed, however, whether all required safety devices were added. The calender was operated and maintained by Goodyear in its Topeka facility from 1972 until 1985 without serious injury to any operator or employee. Plaintiff's accident occurred on July 23, 1985, when plaintiff either reached into the machine or her hand was drawn into the machine, while it was running; the exact scenario by which the accident occurred is disputed. Plaintiff caught her left hand between the impression roll and a calender roll. Comerio contends that the impression roll was designed and installed by Goodyear or some other entity, but not Comerio; plaintiff contends that the documents show that a four-roll machine was designed and provided by Comerio. Although it is apparently undisputed that additional guarding was technically feasible, the parties dispute whether such guarding would impair the utility of the calender to Goodyear.

### Comerio's "Useful Safe Life" Defense

■ Defendant contends that plaintiff's claims are barred because plaintiff's injury occurred after the useful safe life of the product expired under the terms of the Kansas Product Liability Act, K.S.A. 60–3301 *et seq.* ("KPLA"). Section 60–3303 of the KPLA provides:

> ... a product seller shall not be subject to liability in a product liability claim if the product seller proves by a preponderance of the evidence that the harm was caused after the product's "useful safe life" had expired. "Useful safe life" begins at the time of delivery of the product and extends for the time during which the product would normally be likely to perform or be stored in a safe

manner. For the purposes of this section, "time of delivery" means the time of delivery of a product to its first purchaser or lessee who was not engaged in the business of either selling such products or using them as component parts of another product to be sold.

.　　.　　.　　.　　.

(b)(1) In claims that involve harm caused more than 10 years after time of delivery, a presumption arises that the harm was caused after the useful safe life had expired. This presumption may only be rebutted by clear and convincing evidence.

The general purpose for statutes of repose such as the KPLA, modelled on the Model Uniform Product Liability Act, has been stated as two-fold. First, the statute is based upon a policy decision by a legislature that "after a given length of time a manufacturer should be sheltered from liability and furthers 'the public policy of allowing people, after a lapse of a reasonable time, to plan their affairs with a degree of certainty, free from the disruptive burden of protracted and unknown potential liability.'" *Daily v. New Britain Mach. Co.*, 200 Conn. 562, 512 A.2d 893, 904 (1986) (quoting *Johnson v. Star Mach. Co.*, 270 Or. 694, 701, 530 P.2d 53, 56 (1974)). Second, the statute seeks "to avoid the difficulty in proof and record keeping which suits involving older machines impose." *Id.* (citing *Thornton v. Mono Manuf. Co.*, 99 Ill.App.3d 722, 725–26, 54 Ill.Dec. 657, 659, 425 N.E.2d 522, 524 (1981)).

In this case, it is undisputed that Comerio falls within the statutory definition of "a product seller," K.S.A. 60–3302(a). It is similarly undisputed that the wire calender machine manufactured by Comerio was delivered to Goodyear, the product's first purchaser who neither resold such product nor used it as component parts in another product sold by Goodyear, in 1972. It is also

uncontested that plaintiff's harm was caused more than ten years after delivery, on July 23, 1985, when plaintiff's hand was caught in the wire calender machine. Thus, Comerio argues that it has met its burden of proving, by a preponderance of the evidence, that plaintiff's harm was caused after the product's presumed ten-year useful safe life under the KPLA had expired; plaintiff therefore has the burden under the KPLA of proving, by clear and convincing evidence, that the product's useful safe life had not expired by July 23, 1985, the date of her injury. Comerio contends that it is entitled to summary judgment because plaintiff cannot produce sufficient evidence to meet her burden to prove by clear and convincing evidence that her harm occurred during the useful safe life of the product.

In response, plaintiff contends that the machine in question has been in continuous use for nearly 20 years. Plaintiff sets forth expert testimony in affidavit form of Lewis Barbe, in which Mr. Barbe states that the machine in question is "heavy machinery" which is expected to have an extended life in excess of 10 years, "in some instances upwards of 30 years." Plaintiff's Exhibit 1.[1] Further, when questioned about the condition of the machine in question in his deposition, defendant's expert witness, Philip R. Visser, stated that the machine in question appeared to be operating in good condition without excessive wear and tear when the parties examined it at its present location at a Goodyear plant in Canada. Plaintiff's Exhibit 4. Plaintiff also contends that the size (several tons) and the cost (in excess of $160,000.00) of the machine, as well as expert testimony should be considered as tending to rebut the statutory presumption that the useful safe life of the wire calender machine had expired.

Although the KPLA does not define "clear and convincing," the Model Uniform

---

**1.** The court notes that Comerio objects to the Barbe affidavit on several grounds, including that Mr. Barbe, despite his claimed expertise in the tire industry, had limited, if any, experience with wire calender machines in particular; that plaintiff failed to identify the documents consulted by Mr. Barbe and on which he based his affidavit statements; and that the opinions expressed are "conclusory" in nature. The court acknowledges Comerio's objections, but overrules them for purposes of this motion.

Products Liability Act after which the KPLA was modelled states that that evidence is clear and convincing which "not only carries with it the power to persuade the mind as to its probable truth or correctness, but also has an additional element of clinching such truth." *See* Model Uniform Prod. Liability Act § 102(I). In another context, involving the presumption that a city complied with the law in passing an ordinance, the Kansas Supreme Court stated: "[t]o be clear and convincing, evidence should be clear in the sense that it is certain, plain to the understanding, unambiguous, and convincing in the sense that it is so reasonable and persuasive as to make it believable." *City of Haven v. Gregg,* 244 Kan. 117, 119, 766 P.2d 143, 144 (1988). Also, in determining whether a product's useful safe life has expired, the KPLA gives examples of the types of evidence which would be "especially probative," including:

(A) The amount of wear and tear to which the product had been subject;

(B) the effect of deterioration from natural causes, and from climate and other conditions under which the produce was used or stored;

(C) the normal practices of the user, similar users and the product seller with respect to the circumstances, frequency and purposes of the product's use, and with respect to repairs, renewals and replacements;

(D) any representations, instructions or warnings made by the product seller concerning proper maintenance, storage and use of the product or the expected useful life of the product; and

(E) any modification or alteration of the product by a user or third party.

K.S.A. 60–3303(a)(1)(A)–(E).

▮ Upon examination of the parties' arguments, including the parties' factual submissions, the court finds that plaintiff has presented sufficient evidence (even given the clear and convincing standard) to rebut the statutory presumption, and to create an issue triable to a jury regarding whether the useful safe life of the Comerio-manufactured wire calender machine had expired. Specifically, defendant relies solely upon the ten-year statutory presumption; Comerio does not, for its part, present any evidence regarding the above-outlined factors bearing upon the determination of a product's useful safe life. Plaintiff has presented evidence tending to show that this particular product had not been subject to excessive wear and tear and appeared to be operating normally, that the product had not been subject to weather or other conditions causing deterioration, and that heavy machinery of this type was generally expected to, and did, last for years, and even decades.[2] Further, the court notes that the quality, not the quantity, of evidence is most important in determining whether the "clear and convincing" standard is met. *Newell v. Krause,* 239 Kan. 550, 557, 722 P.2d 530, 536 (1986). Thus, defendant's motion for summary judgment on the ground that the wire calender machine's useful safe life had expired will be denied.

*Comerio's Duty to Warn: "Sophisticated User" Defense*

Comerio also contends that it had no duty to warn of the danger that plaintiff encountered on the wire calender machine. It is undisputed that Comerio falls within the KPLA definition of a "manufacturer," K.S.A. 60–3302(b). A manufacturer's duty to warn is set forth in K.S.A. 60–3305 as follows:

In a product liability claim any duty on the part of the manufacturer or seller of the product to warn or protect against a danger or hazard which could or did arise in the use or misuse of such product, and any duty to have properly instructed in the use of such product shall not extend: (a) To warnings, protecting against or instructing with regard to those safeguards, precautions and actions which a reasonable user or consumer of the product, with the training, experience, edu-

---

**2.** The court notes that the last two factors outlined in the statute do not appear to be particularly relevant in this case.

cation and any special knowledge the user or consumer did, should or was required to possess, could and should have taken for such user or consumer or others, under all the facts and circumstances;

(b) to situations where the safeguards, precautions and actions would or should have been taken by a reasonable user or consumer of the product similarly situated exercising reasonable care, caution and procedure; or

(c) to warnings, protecting against or instructing with regard to dangers, hazards or risks which are patent, open or obvious and which should have been realized by a reasonable user or consumer of the product.

In its motion, Comerio contends that the purchaser of the wire calender machine and plaintiff's employer, Goodyear, had a more than general knowledge of the inherent dangers of the machine and that Goodyear was the only entity in a position to effectively communicate those dangers to its employees, such as plaintiff. In support of its position, Comerio cites two Kansas Supreme Court decisions, *i.e.*, *Jones v. Hittle Serv., Inc.*, 219 Kan. 627, 549 P.2d 1383 (1976) and *Mays v. Ciba–Geigy Corp.*, 233 Kan. 38, 661 P.2d 348 (1983). In *Jones*, the Kansas Supreme Court held that the manufacturer of a dangerous product sold in bulk has no duty to warn ultimate consumers; in reaching its decision, the court distinguished bulk sales based upon the lack of individual packaging of the product and the bulk seller's lack of knowledge as to the identity of the ultimate consumer. 549 P.2d at 1392–94. Thus, the bulk seller of propane gas "fulfills his duty to the ultimate consumer when he ascertains that the distributor to whom he sells is adequately trained, is familiar with the properties of the gas and safe methods of handling it, and is capable of passing on his knowledge to the consumer." *Id.* at 1394. Thus, any warning to the ultimate consumer must, therefore, be given by the distributor. *Id.* In *Mays*, the Kansas Supreme Court found that liability was more appropriately placed upon an intermediary, *i.e.*, the installer of a gas pipeline system, rather than the manufacturer where the installer, a sophisticated user, improperly installed and improperly tested the system.

■ Upon examination of the parties' arguments and the cases cited by Comerio, the court finds that Comerio's motion for summary judgment on grounds of the "sophisticated user" defense should be denied. First, the court finds that the cases cited by Comerio are distinguishable from the present case. In *Jones*, a propane explosion in a storm cellar caused three deaths. 549 P.2d at 1387. In affirming the district court's grant of summary judgment in favor of the propane suppliers and manufacturers, the Kansas Supreme Court recognized that a manufacturer's duty to warn may vary with the nature of the product or its packaging. *Id.* at 1392–94. The bulk seller in *Jones* did not package or distribute the product to its ultimate consumer and thus, would have no knowledge of the identity of those ultimate consumers and no communication with the ultimate consumer (via, for example, an individualized package). *Id.* at 1392. The *Jones* court stated:

A bulk supplier to a retail distributor is in an entirely different position from one who sells packaged commodities or deals directly with the consumer. *Id.* at 1393- .... the bulk wholesaler has no way of telling who the ultimate purchaser might be, and has no package on which to endorse any warning. The best the wholesaler could do would be to furnish literature to his retailer and hope it was passed on—a chancy operation at best. We fail to see how this procedure improves upon a situation where the wholesaler deals with a knowledgeable retailer. In either event, the wholesaler must depend upon his vendee to pass on his message, and cannot do so himself.

*Id.* at 1394.

In the present case, Comerio manufactured a single product, a wire calender machine, for Goodyear, in accordance with Goodyear's specifications; thus, Comerio was both the manufacturer and the retailer in the present case. Comerio also knew the intended use and placement of the machine;

a Comerio representative visited Goodyear's plant in Topeka, Kansas, to inspect the machine in its final placement. Thus, the *Jones* rationale, based upon practicality considerations, for placing liability on the distributor rather than the bulk seller of propane gas is inapplicable here.

Similarly, *Mays* involved an explosion which occurred during the initial testing of a natural gas pipeline system, severely burning the plaintiff, an employee of the installer of the system. 661 P.2d at 351. The explosion evidently occurred because plaintiff's employer, a middle party in the distributive chain, improperly installed and improperly tested the pipeline system. In affirming the trial court's grant of summary judgment in favor of the component parts supplier, the Kansas Supreme Court in *Mays* found that the installer was a knowledgeable or sophisticated user who knew of the risks inherent in the installation of a gas pipeline system and that it would be "wholly unrealistic" to find that defendant had a duty to train the installer. 661 P.2d at 364. In this case, defendant has produced no uncontroverted facts to the effect that Goodyear somehow misused or misinstalled the wire calender machine. Further, although Goodyear undisputedly has knowledge about the wire calender machine and its uses, the court finds that Comerio's argument does not necessarily follow that Goodyear "knew or should have known more about the dangers to an end user of the wire calender machine equipped with an impression roll than Comerio." Defendant's Memo., at 12. Further, because there are no undisputed facts before the court to support it, the court also rejects Comerio's argument that "it was not possible for Comerio to place a simple placard or warning on the machine to advise or remind laborers of the particular dangers" of the machine. Defendant's Memo., at 13. The court finds that defendant's arguments based upon K.S.A. 60–3305 are without merit.

### Substantial Modification & Reliance on Specifications Defenses

As adopted by the Kansas Supreme Court in *Brooks v. Dietz*, 218 Kan. 698, 545 P.2d 1104, 1107–08 (1976), section 402A of the Second Restatement of Torts provides:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

In its motion, Comerio denies that its product was defective at the time it left Comerio's control and also denies that its product reached the user, plaintiff, without substantial change in the condition in which it was sold. Specifically, Comerio argues that Goodyear made substantial modifications to the wire calender machine manufactured by Comerio, including the addition of an impression roll, a pricker roll, drive motors, electrical equipment, safety devices and switches. Comerio further argues that but for these modifications by Goodyear, plaintiff's injury would not have occurred. Although Comerio concedes that no Kansas case is directly on point on the issues raised in its summary judgment motion, Comerio cites case law from other jurisdictions regarding the liability of component parts suppliers, principally *Verge v. Ford Motor Co.*, 581 F.2d 384 (3d Cir.1978).

In *Verge v. Ford Motor Co.*, the Third Circuit Court of Appeals addressed the issue of "[o]n whom to place design responsibilities where a product has been manufactured and assembled in more than one stage." 581 F.2d at 385. In *Verge*, Ford had manufactured and sold a cab and chassis which was subsequently converted into

a garbage truck by a third party (by cutting four to six feet from the chassis, placing a compactor unit onto the chassis, and making certain electrical hookups); the third party then shipped the garbage truck to a dealer, who in turn sold it to plaintiff's employer. *Id.* at 387. While working on a garbage collection crew, plaintiff was injured when the truck backed without warning. *Id.* at 385. In his suit against Ford, plaintiff argued that the cab and chassis were in a defective condition at the time it left Ford's hands because it had no warning buzzer that would sound when the truck was put into reverse gear. *Id.* at 386.

In holding that Ford was not responsible for installing the warning buzzer safety device, the *Verge* court stated that the issue to be determined was "whether the responsibility for installing such a device should be placed solely upon the company that manufactured the cab and chassis, or solely upon the company who modified the chassis by adding the compactor unit or upon both." *Id.* (footnote omitted). The Third Circuit stated its analysis of the issue as follows:

> [W]e believe that the requirement that liability only be imposed where the manufacturer is responsible for the defective conditions is necessarily implicit in § 402A.... Where, as here, the finished product is the result of substantial work by more than one party, we must determine responsibility for the absence of a safety device by looking primarily to at least three factors:
>
>   1. Trade Custom—at what stage is that device generally installed.
>   2. Relative expertise—which party is best acquainted with the design problems and safety techniques in question.
>   3. Practicality—at what stage is installation of device most feasible.

581 F.2d at 386–87 (citations omitted).

■ The court finds that it must reject for two basic reasons Comerio's motion for summary judgment on the ground that Goodyear substantially modified the Comerio-manufactured wire calender machine in such a way as to relieve Comerio from responsibility for plaintiff's accident. First, the court finds that the cases cited by defendant are inapposite to the present case and do not entitle Comerio to summary judgment as a matter of law. Second, the court finds that Comerio's motion for summary judgment should be denied because it is based upon several factual premises which have not been established as undisputed in this case, namely: (1) defendant's contention that the "pinch point" which caused plaintiff's injury was created solely by an impression roll added by Goodyear; (2) that the addition of items by Goodyear to the wire calender machine manufactured and shipped by Comerio in a "naked" condition constitutes a "substantial modification;" and (3) the crucial question of where responsibility for the absence of safety or warning devices should be placed, which in turn is dependent upon analysis of several factors, including trade custom, relative expertise, and practicality, evidence of which is not presently before the court. Thus, the court finds that defendant's motion for summary judgment should be denied; the issue of Comerio's responsibility is properly submitted to a jury. *See, e.g., Powell v. E.W. Bliss Co.,* 529 F.Supp. 48 (E.D.Pa.1981), *aff'd,* 681 F.2d 805 and 681 F.2d 808 (3d Cir.1982) (submitting defendant's substantial modification defense to a jury for decision).

■ Similarly, on the facts presently before it, the court will not rule as a matter of law that Comerio should be relieved from liability because it "merely carried out the plans, specifications, and directions given to it" by Goodyear. Although Comerio does not cite any Kansas cases on point, Comerio contends that a rule adopted by a Nebraska court in *Moon v. Winger Boss Co., Inc.,* 205 Neb. 292, 287 N.W.2d 430 (1980), should be adopted here. In *Moon,* the court held:

> a manufacturer is not liable for injuries to a user of a product which it has manufactured in accordance with plans and specifications of one other than the manufacturer, except when the plans are so obviously, patently, or glaringly dangerous that a manufacturer exercising ordi-

nary care under the circumstances then existing would not follow them.

287 N.W.2d at 434.

This court, however, has previously addressed the issue of a manufacturer's liability for design defects in a product manufactured to another's specifications. In *Lenherr v. NRM Corp.*, 504 F.Supp. 165 (D.Kan.1980), the court recognized the applicability to negligence claims of the above-cited rule limiting a manufacturer's liability for design defects the manufacturer did not cause. *Id.* at 174. The court, however, declined to apply the rule to strict liability claims, holding that a non-designing manufacturer can still be liable for design defects it did not cause under a strict liability theory. *Id.* at 174–75. Thus, the court finds that defendant's motion for summary judgment based upon its reliance upon Goodyear's specifications should also be denied.

*Comerio's Liability for Breach of Warranty*

As adopted in Kansas, the Uniform Commercial Code's implied warranty of fitness for a particular purpose provides:

> [w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

K.S.A. 84–2–315. The Kansas comment to this section in relevant part states:

> [t]his warranty cannot arise unless the seller has reason to know the buyer's particular purpose, and has reason to know the buyer's reliance on his skill or judgment. Thus, the question under this section narrows to the factual context of the individual transaction and a particular purpose envisaged by the parties....

K.S.A. 84–2–315 Kansas comment (1983).

■ Comerio contends that it is entitled to summary judgment on plaintiff's claim that Comerio breached an implied warranty of fitness for a particular purpose for several reasons. First, Comerio contends that, at the time of sale, Comerio did not know of a particular purpose for the component parts sold to Goodyear and that Comerio contemplated that the goods would be used for their ordinary purpose and they were in fact so used. Second, Comerio contends that Goodyear did not rely on Comerio's skill or judgment in selecting suitable goods, since all goods furnished to Goodyear by Comerio were furnished at Goodyear's request, in accordance with Goodyear's plans and specifications.

The court finds that Comerio's factual contention that it did not know of the particular purpose for which the Comerio-manufactured items were required is disputed. Further, the question of whether the Comerio-manufactured wire calender machine was used for an "ordinary" or for a "particular" purpose is properly submitted to a jury. *See, e.g., Catania v. Brown*, 4 Conn. Cir. 344, 231 A.2d 668, 670 (1967). However, on the undisputed facts of this case, Goodyear supplied the specifications for the wire calender machine and Comerio delivered a machine in conformance with Goodyear's specifications. Because reliance of the buyer on the seller's judgment is an express statutory requirement of K.S.A. 84–2–315, and because it is undisputed that Goodyear supplied the specifications in this case, leaving no apparent room for the exercise of judgment by Comerio, defendant's motion for summary judgment should be granted with regard to plaintiff's claim for breach of implied warranty of fitness for a particular purpose. *See, e.g., In re Clements & Van Wagenen Constr. Co.*, 23 B.R. 617 (Bankr.E.D.Mich.1982) (holding that as a matter of law, no implied warranty of fitness for a particular purpose arises when goods are manufactured in accordance with specifications provided by the buyer). *Accord Cumberland Farms, Inc. v. Drehmann Paving & Flooring Co.*, 25 Mass.App.Ct. 530, 520 N.E.2d 1321, 1325 (1988).

■ Comerio also contends that summary judgment should be granted in its favor on plaintiff's claim that Comerio breached an implied warranty of merchant-

**514**

ability. The relevant section of the Kansas statutes, K.S.A. 84–2–314, provides:

(1) ... a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

(2) Goods to be merchantable must be at least such as

(a) pass without objection in the trade under the contract description; and

. . . .

(c) are fit for the ordinary purposes for which such goods are used; and

(d) run, within the variations permitted by the agreement, of even kind, quality or quantity within each unit and among all units involved; and

(e) are adequately contained, packaged, and labeled as the agreement may require; and

(f) conform to the promises or affirmations of fact made on the container or label if any.

Comerio contends that the parts it delivered to Goodyear were not in breach of any implied warranty. Comerio also argues that plaintiff's loss did not result from any parts manufactured by Comerio but rather from Goodyear's subsequent act of installing an impression roll, creating a pinch point which caused plaintiff's injury. Finally, Comerio contends that no implied warranty arose in this case because Goodyear (and by extension, plaintiff) knew or reasonably should have been expected to know of the dangerous propensities of the product. In support of its final argument, Comerio principally cites *Goodbar v. Whitehead Bros.*, 591 F.Supp. 552, 567 (W.D.Va.1984), in which the district court held that when a skilled purchaser knows or reasonably should be expected to know of the dangerous propensities or characteristics of a product, no implied warranty of merchantability arises. Comerio has not cited, nor has the court discovered in its own research, a Kansas case adopting the *Goodbar* holding in cases under K.S.A. 84–2–314.

In response, plaintiff contends that under the developing case law, the concepts of breach of implied warranty of merchant-

ability and that of defect in tort are co-extensive. *See* K.S.A. 84–2–314 Kansas comment (1983). Plaintiff further contends that factual issues precluding summary judgment exist regarding whether the warranty was in fact breached and whether the breach was the proximate cause of plaintiff's loss. Because the court finds that defendant has not demonstrated that it is entitled to summary judgment as a matter of law on plaintiff's claim for breach of an implied warranty of merchantability, and because factual issues exist, the court finds that defendant's motion for summary judgment on plaintiff's claim for breach of implied warranty of merchantability should be denied.

IT IS BY THE COURT THEREFORE ORDERED that defendant's motion for summary judgment is granted in part and denied in part, as consistent with this Memorandum and Order.