Houston, J.
The plaintiffs, Kevin O’Donovan and Alessandra O’Donovan (O’Donovan), brought suit against the defendants, Allan Bums and Stop & Shop Supermarket Company (Stop & Shop), for injuries allegedly sustained while installing telecommunications equipment at a store owned and operated by Stop & Shop. In response, the defendants brought a third-party complaint against third-party defendant Microwave Bypass Systems, Inc. (Microwave) for indemnity and breach of contract.under the agreement between the two parties relating to the purchase of the telecommunications equipment being installed by O’Donovan. For the following reasons, Microwave’s motion for summary judgment is DENIED.
BACKGROUND
Stop & Shop agreed to purchase a Microwave Link (Link), an advanced voice and data communications system, from Microwave in December, 1992. Microwave was to deliver and install the Link at Stop & Shop’s New Haven, Connecticut facility. The agreed upon price for the Link was $69,500.00.
*318 On or about March 30, 1993, while working as an employee of Microwave and installing the Link, O’Donovan sustained injuries from an industrial accident due to the alleged negligence of Stop & Shop. O’Donovan later brought this tort action against Stop & Shop. Stop & Shop, then impleaded Microwave seeking indemnification for O’Donovan’s claims, and alleging breach of contract. Stop & Shop’s theory of recovery against Microwave is based on boilerplate language on the reverse side of a one-page purchase order. One of the clauses at issue required Microwave to indemnify or hold harmless Stop & Shop “from all loss, damage sustained by” Stop & Shop in connection with the transaction. The second clause required Microwave to name Stop & Shop as an additional insured on its liability policy. The front page of the purchase order contained the following language: “THIS ORDER IS SUBJECT TO ALL TERMS AND CONDITIONS STATED ON THE REVERSE SIDE HEREOF."
Microwave contends that, although it received the front page of the purchase order via a fax, it did not receive the back page. Stop & Shop asserts that, in its normal course of business, all vendors with which Stop & Shop does business receive both the front and back of the purchase order via the mail.
DISCUSSION
Summary judgment must be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). With respect to any claim on which the party moving for summary judgment does not have the burden of proof at trial, the moving party may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); accord, Kourouvacilis v. General Motors Corp. 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat a motion for summary judgment.” Pederson v. Time, Inc., 404 Mass. at 17. The opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment. LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
I.
As a threshold matter, this court must determine which state’s law is applicable to the determination of the parties’ rights, duties and liabilities under the agreement to sell and install the Link. Neither party seriously disputes that Massachusetts law applies to the case at bar. Massachusetts has abandoned the traditional lex loci approach in favor of a more functional choice-of-law approach that responds to the interests of the parties, the states involved, and the interstate system as a whole. Pevoski v. Pevoski 371 Mass. 358, 359-60 (1976). In so doing, Massachusetts has “adopted the general principles advanced in the Restatement (Second) of Conflict of Laws (1971).” Travenol Laboratories, Inc. v. Zotal Ltd., 394 Mass. 95, 99 (1985). This approach is commonly known as the “most significant relationship” analysis.
The analysis requires more than merely adding up the various contacts; it necessitates a careful balancing of the competing interests, which unavoidably results in some vagueness. Bushkin Associates, Inc. v. Raytheon Co., 393 Mass. 622, 631 (1985). While the method is more discretionary and therefore less predictable, its rejection of artificial conditions avoids the awkward and arbitrary results of the traditional approach. Id. at 541.
As there was no agreed upon choice of forum law agreement between the parties, the court will turn to the test set forward in §188 of the Restatement for guidance. Section 188 sets forth several factors to be considered in determining the applicable law. These factors include the place of contracting, place of negotiation, place of performance, location of the subject matter of the contract, and the place of business of the contracting parties.
The facts of this case clearly indicate that the appropriate law to be applied in this case is that of the Commonwealth of Massachusetts. The contract, whatever its terms maybe, was negotiated and entered into in Massachusetts. Both parties to the contract are Massachusetts corporations. The Link, the subject matter of the contract, originated in Massachusetts, as did the labor required to install it. Although the place of performance under the contract was in Connecticut, the balancing of the above factors, as well as the consideration of the additional factors set forth in §6 of the Restatement,[3] compels the court to hold that the law of Massachusetts governs the rights, duties and liabilities of the contracting parties.
II.
The next issue that must be addressed in order for the court to properly consider Microwave’s motion is what Massachusetts law applies to the contract. This issue is further complicated by the fact that the agreement between the parties for the purchase and installation of the Link constitutes a transaction for both goods and services. A transaction for the sale of goods falls under article two of the Uniform Commercial Code (UCC), as adopted in Massachusetts, G.L.c. 106, §2-102.[4] Article two is inapplicable to a contract for *319 the rendition of services. White v. Peabody Construction Co., Inc., 386 Mass. 121, 132 (1982).
It is well settled in Massachusetts that the test for applicability where the contract is for both goods and services intertwined “is whether the predominant factor, thrust or purpose of the contract is (1) ‘the rendition of service, with goods incidentally involved,... or is [instead (2)] a transaction of sale with labor incidentally involved . . .’ ” Cumberland Farms, Inc. v. Drehmann Paving & Flooring Co., 25 Mass.App.Ct. 530, 534 (1988), quoting Bonebrake v. Cox, 499 F.2d 951, 960 (8th Cir. 1974). See also White, 386 Mass. at 132; Zapatha v. Dairy Mart, Inc., 381 Mass. 284, 290 n.8 (1980).
The parties disagree as to whether the determination as to the nature of this contract is a question of law for the court or a question of fact for the finder of fact. The court agrees with Stop & Shop that the-question of whether a contract is predominantly for goods or services turns upon the facts of the case. Nevertheless, “that does not mean that the issue can never be determined by summary judgment. If there is no genuine issue of material fact summary judgment is appropriate.” Insul-Mark Midwest v. Modern Materials, 594 N.E.2d 459, 464 (Ind. App. 3d Dist. 1992). Compare USM Corp. v. Arthur D. Little Systems, Inc., 28 Mass.App.Ct. 108, 116 (1989) (“The interpretation of a contract presents a question of law for the court, except to the extent disputed facts bear upon such interpretation”); and Cataldo v. Zuckerman, 20 Mass.App.Ct. 731, 743 n.20 (1985) (issue under contract “peculiarly appropriate for decision by the fact finder” when issue “involved a number of complicated issues and possible inferences of fact, and not merely a simple determination on facts not disputed”).
This case presents no genuine issue of material fact as to the subject matter of the contract. Neither parly disputes that the contract was for the provision and installation of the Link. Neither party disputes the contract price. In order to determine the “thrust” of the contract between Microwave and Stop & Shop, the court will view the situation “in a realistic economic light.” Zapatha, 381 Mass. at 290 n.9. In so doing, the court concludes that the essence of the agreement between the parties was for the Link itself. The installation of the Link was merely incidental to the transaction. Although certain services were necessarily supplied by Microwave in connection with the Link, the basis for the agreement was Stop & Shop’s desire to obtain the sophisticated telecommunications equipment. There was no continuing duty on Microwave’s part to run or maintain the system once it was satisfactorily installed. This contract was, at its core, a transaction of goods. See USM Corp., 28 Mass.App.Ct. at 119 (contract for the design and implementation of a sophisticated computer system was correctly considered a contract for goods); Triangle Underwriters, Inc. v. Honeywell, Inc., 604 F.2d 737, 742-43 (2d Cir. 1979) (contract for purchase and installation of computer system was a contract for the sale of goods, even though certain services by the seller were contemplated). Therefore, article two of the Uniform Commercial Code is the applicable law for the interpretation of the contract for tire Link.
III.
Central to Microwave’s motion for summary judgment is the purported unenforceabilüy of the clauses located on the reverse side of the purchase order. Neither party contends that the clauses in question were included in the original discussions between the parties. However, the terms were included in the purchase order produced by Stop & Shop. In fact, the purchase order included several clauses apparently not previously included in the original discussions between the parties. Therefore, the court must consider whether, based on the record before it, the indemnification and additional insured provisions are enforceable as additional terms to the contract between the parties or under the statute of frauds. In the case before the court, both issues raise questions of fact not capable of resolution on a motion for summary judgment.
Traditionally, additional terms made in connection with an acceptance are construed as a rejection of the offer. Kehlor Flour Mills Co. v. Linden & Lindstroem, 230 Mass. 119, 123 (1918). Even under the UCC, additional terms are considered merely as proposals for addition to a contract. G.L.c. 106, §2-207(2). However, under the UCC, additional terms become part of a contract between merchants unless the new terms “materially alter” the contract or Microwave seasonably objected to the addition of the terms to Stop & Shop. G.L.c. 106, §2-207(2)(b) and (c). Both parties are properly considered merchants. G.L.c. 106, §2-104(1) and Code Comment.
There is a genuine dispute of material fact as to whether the additional term was adequately communicated by Stop & Shop to Microwave. If Microwave never received the portion of the purchase order which contained the two clauses or did not have reasonable notice of its existence, the clauses “can not be deemed to be part of the contract.” Ronald A. Anderson, Uniform Commercial Code §2-207:17 (1982 & 1993 Supp.).
The fact that the additional provision is on the reverse side of the form does not condemn it as an “unseen provision” that is not part of the contract. See, e.g., Hunt v. Perkins Machinery Co., 352 Mass. 535, 539 (1967). The court declines to rule at this time whether the language on the front page of the purchase order which refers to the terms and conditions on the reverse side was sufficiently conspicuous so as to bind Microwave to the terms on the reverse side of the purchase order, assuming for the moment that Microwave had proper notice of the terms. Moreover, the court declines to rule on whether the disputed *320 terms constitute material additions to the contract or whether Microwave’s actions manifested acceptance of the additional terms. Regardless of these unresolved issues, summary judgment remains improper as long as the dispute exists as to whether Microwave had adequate opportunity to'inspect the additional terms which would justify holding Microwave liable for indemnification or breach of contract. See Ober v. National Casualty Co., 318 Mass. 27, 30 (1945) (indicating that “where more than one view can be taken of the evidence respecting the circumstances [surrounding a contract,] ... a proper case arises for the jury”).
Microwave offers a further challenge to the enforceability of the indemnification clause under the statute of frauds. See G.L.c. 106, §2-201. Under §2-201(2), Microwave, as a merchant, will be bound to the terms of the purchase order, including the indemnification clause, if it was properly sent, received, and “the party receiving it [had] reason to know its contents.” Whether the complete purchase order was received by Microwave or whether the language on the faxed copy which indicated the existence of additional terms on the back was sufficient to give Microwave “reason to know” of the challenged clauses are two important questions of fact not properly determined on a motion for summary judgment.
Therefore, as several issues of material fact remain in dispute between the parties, summary judgement is appropriately denied.
ORDER
For the foregoing reasons, it is hereby ORDERED that the Third-Party Defendant Microwave Bypass Systems, Inc.’s Motion for Summary Judgment be DENIED.

The factors include: “(a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relevant interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability and uniformity of result; and (g) ease in the determination and application of the law to be applied.” Restatement (Second) of Conflict of Laws §6 (1971).

“[T]his Article applies to transactions in goods . . .’’ G.L.c. 106, §1-201; see also G.L.c. 106, §2-105 (“ ‘Goods’ means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale").